## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

| | | |
|---|---|---|
| **MICHAEL M. KOSTENKO,** | ) | |
| | ) | |
| **Movant,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:19-00574** |
| | ) | **(Criminal No. 5:16-00221)** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

### PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is Movant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody.[1] (Document No. 177.) By Standing Order, this matter was referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 179.)

### FACTUAL AND PROCEDURAL BACKGROUND

1.     **Criminal Action No. 5:16-00221:**

On April 26, 2017, Movant pled guilty to one count of Distribution of Oxycodone Not for Legitimate Medical Purposes in the Usual Course of Professional Medical Practice and Beyond the Bounds of Medical Practice in violation of 21 U.S.C. § 841(a)(1) (Count Seven of the Superseding Indictment). (Criminal Action No. 5:16-00221, Document Nos. 102 and 103.) A Presentence Investigation Report was prepared. (Id., Document No. 157.) The District Court

---

[1] Because Movant is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

determined that Movant had a Base Offense Level of 32, and a Total Offense Level of 42, the Court having applied the following: (1) A two-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(12) because Movant maintained a premises for the purpose of distributing a controlled substance; (2) A two-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(15); (3) A two-level enhancement pursuant to U.S.S.G. § 3A1.1(b)(1) because Movant knew or should have known the victims were vulnerable victims; (4) A two-level enhancement pursuant to U.S.S.G. § 3B1.3 because Movant, as a licensed physician, abused his position of public or private trust or used a special skill; and (5) A two-level enhancement pursuant to U.S.S.G. § 3B1.1(c) because Movant was an organizer, leader, or manager in the criminal activity. (Id., Document Nos. 148 and 157.) The District Court sentenced Movant on August 23, 2017, to serve a 240-month term of imprisonment, to be followed by a five-year term of supervised release. (Id., Document No. 147.) The District Court also imposed a $100 special assessment and a $50,000 fine. (Id.)

On August 28, 2017, Movant filed a Notice of Appeal. (Id., Document No. 154.) In his appeal, Movant argued that his guilty plea was entered into involuntarily and the District Court erred in accepting his plea. (Id., Document No. 173.) Movant argued that he pled guilty only because he believed his trial attorneys were not providing adequate representation. (Id.) On August 8, 2018, the Fourth Circuit Court of Appeals affirmed Movant's conviction and sentence. United States v. Kostenko, 733 Fed.Appx. 718 (4th Cir. 2018).

**2.      Section 2255 Motion:**

On August 6, 2019, Movant, acting *pro se*, filed his instant Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (Civil No. 5:19-00574, Document No. 177.) As grounds for *habeas* relief, Movant alleges as follows: (1) "Coercion of

guilty plea;" (2) "Court appointed counsel in conflict of interest of defense with defendant;" (3) Court appointed counsel failed "to submit prosecution's cause to meaningful adversarial test;" (4) Court appointed counsel failed to investigate; (5) Court appointed counsel failed "to raise pretrial claim of government's decision and process of prosecution being unlawful and unconstitutional;" (6) "Counsel's ineffective post-conviction assistance to plea withdrawal and sentencing hearing;" (7) Actual innocence; and (8) Miscarriage of justice. (Id.) Therefore, Movant requests that this Court grant his Section 2255 Motion and "approve a Civil RICO Statement Order to satisfy the specificity requirements of Rule 9(b)." (Id.)

By Order entered on August 8, 2019, the undersigned directed trial counsel, E. Ward Morgan and Derrick W. Lefler, to file an affidavit responding to Movant's claims of ineffective assistance of counsel and the United States to file its Answer. (Id., Document No. 182.) Attorneys Morgan and Lefler filed their Affidavits on September 9, 2019. (Id., Document Nos. 186 and 187.) On October 15, 2019, the United States filed its Response to Movant's Section 2255 Motion. (Id., Document No. 189.) The United States argues that Movant's Section 2255 Motion should be denied based on the following: (1) Movant's ineffective assistance of counsel claims that were previously adjudicated on direct appeal are procedurally barred (Id., pp. 7 – 10.); (2) Movant's ineffective assistance of counsel claim raised for the first time in his Section 2255 Motion fail to satisfy the Strickland standard (Id., pp. 10 – 17.); (3) Movant's actual innocence claim fails because he "knowingly and voluntarily stipulated to facts and pleaded guilty" (Id., pp. 17 – 18.); and (4) Movant's "miscarriage of justice claim should be dismissed because [Movant] demonstrates no applicable procedural default" (Id., pp. 18 – 19.). Accordingly, the United States requests that Movant's Section 2255 Motion be denied. (Id.)

3

On December 9, 2019, Movant filed his Response in Opposition. (Id., Document No. 193.) On December 30, 2019, Movant filed his "Motion to Expand the Record." (Id., Document No. 194.) Specifically, Movant requests permission to file his Affidavit in Support of his Section 2255 Motion. (Id.) As an Exhibit, Movant attached a copy of his Supporting Affidavit.[2] (Id., Document Nos. 194-1 and 194-2.) On December 4, 2020, Movant filed a "Communication to the Court of Issues and Status of Petitioner's 2255 Motion." (Id., Document No. 197.) On May 25, 2021, Movant filed his "Amended Communication to the Court of Issues and Status of Petitioner's 2255 Motion." (Id., Document No. 198.)

## DISCUSSION

The relevant portion of Section 2255 provides as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

A motion made pursuant to Section 2255 is a collateral attack on a conviction or sentence. To succeed on a Section 2255 motion, the movant must prove that "his sentence or conviction was imposed in violation of the Constitution or law of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack." 28 U.S.C. § 2255. "A motion collaterally attacking a petitioner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." Sutton v. United States, 2006 WL

---

[2] By separate Order entered this day, the undersigned has granted Movant's Motion and directed the Clerk to docket Movant's Supporting Affidavit as a separate docket entry.

36859, * 2 (E.D.Va. Jan. 4, 2006).

1.      **Ineffective Assistance of Counsel:**

Indigent criminal defendants have the constitutional right to effective assistance of counsel through direct appeal. Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) When a movant claims ineffective assistance of counsel as a basis for seeking relief under Section 2255, the burden is on the movant to prove that his trial attorney failed to render effective assistance. Strickland v. Washington, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). In Strickland, the Court adopted a two-pronged test for determining whether a defendant received adequate assistance of counsel. Id. The first prong is competence. The movant must show that the representation fell below an objective standard of reasonableness. Strickland, 466 U.S. at 687 - 691, 104 S.Ct. at 2064 - 2066. There is a strong presumption that the conduct of counsel was in the wide range of what is considered reasonable professional assistance, and a reviewing Court must be highly deferential in scrutinizing the performance of counsel. Strickland, 466 U.S. at 688-89, 104 S.Ct. at 2065 - 2066.

> A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. . .. [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

Strickland, 460 U.S. at 690, 104 S.Ct. at 2066. The Court will not second-guess an attorney's tactical decisions unless they appear unreasonable in view of all of the circumstances. Goodson v. United States, 564 F.2d 1071, 1072 (4th Cir. 1977). The second prong is prejudice. The movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability

5

sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 U.S. at 694, 104 S.Ct. at 2068;

<u>Hill v. Lockhart</u>, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). An attorney's mere

mistake, ignorance or inadvertence does not suffice for proof of ineffective assistance. <u>Murray v.</u>

<u>Carrier</u>, 477 U.S. 478, 106 S. Ct. 2639, 2645-46, 91 L.Ed.2d 397 (1986)("So long as a defendant

is represented by counsel whose performance is not constitutionally ineffective under the standard

established in <u>Strickland v. Washington</u>, . . . we discern no inequity in requiring him to bear the

risk of attorney error that results in a procedural default.") The movant must therefore show (1)

that his attorney's performance was constitutionally inadequate, i.e., that he committed errors so

serious that his performance "fell below an objective standard of reasonableness" and (2) that his

attorney's performance prejudiced him such that it rendered the proceeding fundamentally unfair

or made the result unreliable. <u>Strickland</u>, 466 U.S. at 687 - 88, 104 S.Ct. at 2064 - 2065; <u>Fitzgerald</u>

<u>v. Thompson</u>, 943 F.2d 463 (4th Cir. 1991), <u>cert. denied</u>, 502 U.S. 1112, 112 S.Ct. 1219, 117

L.Ed.2d 456 (1992).

**A.      Alleged ineffectiveness regarding plea:**

In Grounds One and Two, Movant alleges that his plea was involuntary due to ineffective

assistance of counsel by Attorneys Morgan and Lefler. (Civil Action No. 5:19-00574, Document

No. 177, p. 13.) First, Movant argues that he was coerced into entering a guilty plea because

Attorneys Morgan and Lefler made statements like "pray for a plea deal." (<u>Id.</u>) Second, Movant

argues that he had a "conflict of interest" with his defense counsel. (<u>Id.</u>) Movant explains that he

and his attorneys had "irreconcilable differences of theory and strategy." (<u>Id.</u>) Movant complains

that his attorneys did not support Movant's "defense theory and strategy of actual innocence and

government abuse of power characterized by fraudulent official process and procedures." (<u>Id.</u>)

6

Movant argues that during his Plea Hearing, Movant "stated 'No' to being satisfied with defense counsel." (Id.) Therefore, Movant contends that his plea was involuntary due to ineffective assistance of counsel. (Id.)

In his Affidavit, Attorney Morgan states that "[d]uring two days of trial as the evidence against our client began to mount, I urged him again to accept a plea." (Id., Document No. 186, p. 5.) Attorney Morgan asserts that "[a]fter several recess and discussions, including at least one with his daughter, [Movant] agreed to plead to one count." (Id.) Attorney Morgan states that he has no specific recollection of telling Movant to "pray for a deal" and such is not something he would normally say to a defendant. (Id., p. 6.) Attorney Morgan acknowledges that Movant indicated during the Plea Hearing that Movant was pleading guilty because he was dissatisfied with the cross-examination of Mr. Meadows. (Id., pp. 6 – 7.) Attorney Morgan, however, explains that Movant was upset that Mr. Meadows was not questioned on his pending criminal charges and purported mental illness. (Id., p. 7.) Attorney Morgan states that the District Court had ruled that questioning concerning Mr. Meadows' pending criminal charges were prohibited by Rule 608 of the Federal Rules of Evidence. (Id.) As to Mr. Meadows' purported mental illness, Attorney Morgan states that the only medical records they had concerning Mr. Meadows were the records from Movant, and such records made "no mention of mental illness during six years Mr. Kostenko prescribed opiates to him." (Id.) Thus, Attorney Morgan states "[t]here was simply no basis for questioning him about his mental state." (Id.)

In his Affidavit, Attorney Lefler acknowledges that "[d]uring the course of trial preparation, discussions were had at various times with [Movant] concerning a potential plea." (Id., Document No. 187, p. 4.) Attorney Lefler explains that he does "not recall specific words

7

utilized," but "I am sure that at some point I urged the [Movant] to give serious consideration to the plea." (Id., pp. 4 and 8.) Attorney Lefler explains as follows: "I certainly felt like there was a substantial possibility that guilty verdicts would be returned on some or all of the counts and a verdict returned on any count including 'Causing Death,' the guideline minimum would be equal to the statutory maximum under the plea." (Id., p. 8.)

In Response, the United States argues that above claims are procedurally barred because the claims were previously adjudicated on direct appeal. (Id., Document No. 189, pp. 7 – 10.) The United States notes that Grounds One and Two are centered on the alleged involuntariness of Movant's plea of guilty. (Id., p. 9.) The United States argues that "[t]hese issues have already been fully considered by the Fourth Circuit and should be dismissed." (Id.) The United States further asserts that Movant's "responses under oath to the Court during his plea colloquy contradict the allegations [Movant] has now raised and [Movant] has failed to show, or even allege, extraordinary circumstances." (Id.) The United States notes that Movant "stated under oath that he was satisfied with the legal representation of his attorneys, that he was no longer dissatisfied with his attorneys because they explained the corroborated evidence regarding Mr. Meadows' testimony, and that it was in his best interest to plead guilty." (Id.) The United States, therefore, concludes that Movant "fails to overcome the presumed truthfulness of his Rule 11 colloquy, and this issue has been previously litigated on direct appeal and is therefore barred." (Id.)

In Reply, Movant argues that Grounds One and Two are not procedurally barred. (Id., Document No. 193, pp. 3 – 4.) Movant contends that the "Fourth Circuit's opinion affirming this Court's judgment makes it clear that [Movant] did not raise a claim of ineffective assistance of counsel on direct appeal." (Id.) In support, Movant cites the Fourth Circuit as follows:

Although, in some extraordinary circumstances, ineffective assistance of counsel can render a guilty plea involuntary, *see, e.g. United States. White*, 366 F.3d 291, 297-98 (4th Cir. 2004), here, Kostenko contends not that his counsel's performance was actually deficient, but only that he perceived it to be.

(Id.) Movant, therefore, concludes that Grounds One and Two are not procedurally barred. (Id.)

(Id., Document Nos. 194-1, 194-2.)

A guilty plea must be "a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed. 2d 162 (1970). The United States Supreme Court held in Mabry v. Johnson, 467 U.S. 504, 508, 104 S.Ct. 2543, 2546 - 47, 81 L.Ed.2d 437 (1984), "[i]t is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." Once a criminal defendant has pled guilty, collateral review is limited to an examination of "whether the underlying plea was both counseled and voluntary." United States v. Broce, 488 U.S. 563, 569, 109 S. Ct. 757, 102 L.Ed.2d 927 (1989); see also Fields v. Attorney General of State of Md., 956 F.2d 1290, 1294 - 95 (4th Cir. 1992). A guilty plea will be deemed involuntary if it is entered without knowledge of material information withheld by the prosecution. See for example Sanchez v. United States, 50 F.3d 1448, 1453 (9th Cir. 1995)(A defendant challenging the voluntariness of a guilty plea may assert a claim under Brady that the prosecution withheld evidence favorable to the defendant and material to guilt or punishment when defendant requested it.).

The Rule 11 colloquy is designed to ensure that a guilty plea is both intelligent and voluntary. See United States v. Vonn, 535 U.S. 55, 58, 122 S.Ct. 1043, 152 L.Ed.2d 90 (2002). "Prior to accepting a guilty plea, a trial court, through colloquy with the defendant, must inform the defendant of, and determine that he understands, the nature of the charge(s) to which the plea

is offered, any mandatory minimum penalty, and the maximum possible penalty and various rights." United States v. DeFusco, 949 F.2d 114, 116 (4th Cir. 1991). "[A] valid plea of guilty requires that the defendant be made aware of all 'the direct consequences of his plea." See Cuthrell v. Director, Patuxent Inst., 475 F.2d 1364, 1365 (4th Cir.), cert. denied, 414 U.S. 1005 (1973); Manley v. United States, 588 F.2d 79, 81 (4th Cir. 1978). A defendant's statement that his plea is voluntary and knowingly is generally considered conclusive on the issue. Savino v. Murrary, 82 F.3d 593, 603 (4th Cir. 1996); also see Fields v. Attorney General of Maryland, 956 F.2d 1290, 1299 (4th Cir. 1992)("Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy."), cert. denied, 506 U.S. 885, 113 S.Ct. 243, 121 L.Ed.2d. 176 (1992); DeFusco, 949 F.2d at 119 (A defendant's statements at the plea hearing are strong evidence of the voluntariness of the plea agreement), cert. denied, 503 U.S. 997, 112 S.Ct. 1703, 118 L.Ed.2d. 412 (1992). The Fourth Circuit has recognized that "[i]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements. Otherwise, a primary virtue of Rule 11 colloquies would be eliminated - 'permit[ting] quick disposition of baseless collateral attacks." United States v. LeMaster, 403 F.3d 216, 220 (4th Cir. 2005).

The undersigned finds that Movant's above argument that his guilty plea was involuntary is without merit. A review of the record reveals that Movant's guilty plea was counseled, voluntary, and made with full knowledge of its consequences. The written plea agreement provided that "Mr. Kostenko will plead guilty to Count Seven of said superseding indictment, which charges him with

a violation of 21 U.S.C. § 841(a)(1) (distributing oxycodone not for legitimate medical purposes in the usual course of professional medical practice and beyond the bounds of medical practice)." (Criminal No. 5:16-00221, Document No. 103, p. 2.) The written plea agreement spelled out the maximum sentence to which Movant was subject by virtue of his plea. (Id.) Specifically, the plea agreement stated that Movant faced a term of "imprisonment for a period of up to 20 years." (Id.) Finally, the plea agreement stated at Paragraph 13 that "[t]he matter of sentencing is within the sole discretion of the Court. The United States has made no representations or promises as to the specific sentence." (Id., p. 6.)

During Movant's Plea Hearing conducted on April 25, 2017, the District Court noted that it was day two of Movant's jury trial and Movant indicated a desire to enter into a plea. (Criminal No. 5:16-00221, Document No. 114.) Movant acknowledged that his plea was voluntary, and he had adequate time with counsel. (Criminal No. 5:16-00221, Document No. 114, pp. 6 – 7, 15 - 28.) Specifically, the follow colloquy occurred between the District Court and Movant:

THE COURT:  All right. Without your having to reveal things to me other than what you should, are you offering to take a plea voluntarily and of your own free will?

THE DEFENDANT: Yes.

THE COURT:  In other words, we ended the last hearing with your pleading not guilty and I'm going to have to be very sure that there is no pressure, no coercion, no intimidation, nothing of that nature that has resulted in your having a change of heart. Is that correct?

THE DEFENDANT: Correct.

THE COURT:  And can you express to me the basis of your change of mind?

THE DEFENDANT: I don't think I'm popular enough to win. I don't believe I'm going to be able to prevail in this case.

11

| | |
|---|---|
| THE COURT: | All right. And I take it that you have made that determination based on your having listened to the witnesses and been able to observe what has happened thus far here in the trial; is that correct? |
| THE DEFENDANT: | Correct. |
| THE COURT: | I take it that you've also had the opportunity to consult with your attorneys. Is that also true? |
| THE DEFENDANT: | Yes. |

* * *

| | |
|---|---|
| THE COURT: | . . . Do you believe, Mr. Kostenko, that you've had adequate time to discuss your case with your attorneys, Mr. Morgan and Mr. Lefler? |
| THE DEFENDANT: | Yes. |

(Id., pp. 6, 15 - 16.) Although the record reveals that Movant initially indicated that he was not completely satisfied with his legal representation, Movant later confirmed he was satisfied with his legal representation and acknowledged that he had received sufficient legal advice. (Id., pp. 16 – 28.) Movant initially indicated he was dissatisfied that his attorney had failed to ask certain questions while cross-examining Mr. Meadows. (Id.) After further consultation, Attorneys Morgan and Lefler represented that they explained to Movant that Mr. Meadows could be re-called as a witness if he proceeded with trial, but they anticipated that the United States had other witnesses that would corroborate Mr. Meadows' testimony. (Id.) Movant then confirmed it was his desire to plead guilty and he was satisfied with his legal representation. (Id.) Specifically, the following colloquy occurred between the District Court and Movant:

| | |
|---|---|
| THE COURT: | Have these lawyers been able to answer your questions about how to best proceed in this matter? |

12

THE DEFENDANT:    I believe so.

THE COURT:    And are you completely satisfied with the legal
representation you've received from Mr. Morgan and Mr.
Lefler from its very beginning up through and including
today?

THE DEFENDANT:    No.

* * *

THE COURT:    . . . Let me ask you again, are you satisfied with the legal
representation you've received from Mr. Morgan and Mr.
Lefler during the course of their representation of you?

THE DEFENDANT:    Yes.

* * *

THE COURT:    Mr. Kostenko, you have indicated that you are satisfied with
the legal representation that you've received from Mr.
Morgan and Mr. Lefler. Again, it's different than your earlier
answer. So I would like to hear from you as to what resulted
in the difference in your answer. I have to be convinced that
this is voluntary on your part, Mr. Kostenko. And without
being convinced of that, I can't go forward.

THE DEFENDANT:    They, they have explained good common sense lawyer stuff
to be that the state, the feds or the Government will have
corroborated evidence to some degree of some things that I
disagree with with Mr. Meadows, but that will be evidence
that's - - will be very strong in, in influencing the decision
of the jury. So it's in my best interest to take this plea.

THE COURT:    All right. So after consulting with your lawyers on the issue
that caused you to give your initial response, you have re-
thought it, I take it, and you believe that they - - you are
satisfied with their representation?

THE DEFENDANT:    Yes.

(Id., pp. 16, 26 – 28.) Movant further acknowledged that he understood the terms of the plea

agreement and he wished to plead guilty. (Id., pp. 30 - 35.) Movant confirmed he wanted the Court

13

to accept the plea agreement. (<u>Id.</u>, p. 35.) The District Court then discussed in detail with Movant the nature of the charges, the consequences of pleading guilty, and the constitutional and legal rights Movant was giving up by pleading guilty. (<u>Id.</u>, pp. 35 – 56.) Finally, the District Court again inquired of Movant concerning the voluntariness of his guilty plea. (<u>Id.</u>, pp. 48 - 49.) Specifically, the Court inquired of Movant as follows:

> THE COURT:          Has anyone tried to force, coerce, threaten, intimidate, put pressure on you or talk you into pleading guilty against your will?
>
> THE DEFENDANT: No.
>
> THE COURT:          Other than the plea agreement which you all have shared with me, has anyone made you any promises or told you anything different than what I've said to you to induce you to plead guilty.
>
> THE DEFENDANT: Not at all.
>
> THE COURT:          Are you doing so voluntarily and of your own free will?
>
> THE DEFENDANT: Yes.
>
> THE COURT:          And is pleading guilty your own personal decision?
>
> THE DEFENDANT: Yes.

(<u>Id.</u>, pp. 56 – 57.)

Based on the foregoing, the undersigned finds that Movant's guilty plea was voluntary and made with full knowledge of its consequences. Although Movant expressed that he was unhappy that the jury trial did not appear to be going in his favor, there is no indication that Movant's plea of guilty was entered into involuntary, unknowingly, or unintelligently. Specifically, Movant expressed dissatisfaction concerning his attorneys' cross examination of Witness Meadows. (Criminal Action No. 5:16-00221, Document No. 114, pp. 16 – 28.) The District Court, however,

explained to Movant that his attorneys were required to cross-examine witnesses within the bounds

of ethical and evidentiary rules. (Id., pp. 14 - 24.) The District Court took a recess to allow Movant

and his attorneys time to discuss the cross examination of Witness Meadows and Movant's desire

to plead guilty. (Id., pp. 25 – 26.) Following the recess, Attorney Lefler represented as follows:

> During the, the intermission, I told the defendant that if it was his desire to try this
> case that we would recall Mr. Meadows in our case in chief and explore any of
> those issues that he would like explored, but also assured him that much of Mr.
> Meadows' testimony we felt would be also corroborated by other Government
> witnesses. So to the extent that we may be able to call certain aspects of his
> testimony into question, that there were some aspect that were going to be subject
> to confirmation that would lend his testimony credibility in some very key areas
> that were going to be difficult for him.

(Id., p. 27.) Movant then confirmed that he wished to plead guilty, he now understood the

attorneys' method of cross examination, and he was no longer dissatisfied with his attorneys'

representation. (Id., pp. 26 – 28.) Further, the District Court advised Movant multiple times that it

was Movant's decision to either plead guilty or go to trial, and Movant continuously affirmed that

it was his personal decision to go forward with the plea agreement. "[I]n the absence of

extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is

conclusively established, and a district court should, without holding an evidentiary hearing,

dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn

statements." Lemaster, 403 F.3d at 221-22. Accordingly, the undersigned finds Movant's

allegation that his plea was entered in to unknowingly, involuntarily, and unintelligently due to

ineffective assistance of counsel is without merit.

Finally, the undersigned finds that Movant's above argument in procedurally barred. In

Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir.)(per curiam), cert. denied, 429 U.S.

863, 97 S.Ct. 169, 50 L.Ed.2d 142 (1976), the Court held that a defendant "will not be allowed to

recast, under the guise of a collateral attack, questions fully considered [on appeal]." The undersigned finds that the foregoing challenge to the voluntariness of Movant's plea was raised on appeal and rejected by the Fourth Circuit. The undersigned finds that on direct appeal, Movant argued that "he pleaded guilty on because he believe that his trial attorneys were not providing adequate representation." <u>Kostenko</u>, 733 Fed.Appx. at 718. The Fourth Circuit rejected Movant's claim stating as follows:

> While Kostenko clearly indicated his concerns with counsel's trial preparation, he nevertheless affirmed, during his Rule 11 colloquy, that his decision to plead guilty was made voluntarily and of his own free will, without any coercion, pressure, or intimidation. Critically, such declarations "carry a strong presumption of verity." *Lemaster*, 403 F.3d at 221(internal quotation marks omitted). Although, in some extraordinary circumstances, ineffective assistance of counsel can render a guilty plea involuntary, *see, e.g., United States v. White*, 366 F.3d 291, 297-98 (4th Cir. 2004), here, Kostenko contends not that his counsel's performance was actually deficient, but only that he perceived it to be. Based on our review of the record, we conclude that Kostenko has not overcome the presumption that the statements he made during the Rule 11 hearing were truthful.

<u>Id.</u> at 718-19. Movant now attempts to recast, under the guise of collateral attack, a question fully considered and previously rejected by the Fourth Circuit. Therefore, Movant's above claim is procedurally barred because Movant is seeking to revisit the same issue that was addressed on direct appeal without directing the Court to any intervening change in law which authorizes him to do so.

Based upon the foregoing, the undersigned respectfully recommends that Movant's above *habeas* claim be denied.

**B.    Alleged failure to submit prosecution's case to meaningful adversarial testing:**

In Ground Three, Movant alleges that his attorneys failed "to submit prosecution's case to meaningful adversarial testing." (Civil Action No. 5:19-00574, Document No. 177, pp. 13 - 14.)

First, Movant complains that he was not aware that he could subpoena witnesses. (Id., p. 13.) Second, Movant asserts that "[c]ounsel had no effective strategy to justify medical practices of petitioner" or "to cross examine any of the prosecution witnesses for testimony being false or misleading." (Id., pp. 13 – 14.) Third, Movant contends that "[c]ounsel allowed all evidence presented by prosecution to be misrepresented by witness testimony to the inference of guilt." (Id., p. 14.) Finally, Movant complains that "[p]retrial motion practice of counsel accepted West Virginia state agency action against Kostenko as being true without preparing trial strategy for showing falsehood." (Id.)

In his Affidavit, Attorney Morgan states that "I recall many discussions about potential witnesses for the defense" and "[w]e secured the attendance of three former employees through subpoena (Jennifer Harvey, Kenneth Lewis, and Robin Richmond, Docs. 93, 94, 95)." (Id., Document No. 186, pp. 7 – 8.) Concerning Movant's assertion that counsel had no "effective strategy to justify" his medical practice, Attorney Morgan states that he had a strategy but whether it would have been effective was a question for the jury. (Id., p. 8.) Attorney Morgan states that their defense theory was that Movant's indictment was a concerted conspiracy to shut down Movant's unorthodox medical practice. (Id., p. 2.) Attorney Morgan explains that during his cross examination of Agent King, he attempted to get Movant's record of "activism" before the jury, "brought to the jury's attention [Movant's] 'whistleblower" lawsuits, and characterized Movant as a "crusader for reform." (Id., p. 7.) Attorney Morgan states that there "was a conscious effort from the outset to advance our theory of retaliation against [Movant] and I planned to get these documents admitted into evidence through him when he testified." (Id.) Concerning Movant's assertion concerning the cross-examination of the United States' witnesses, Attorney Morgan

states that he cross-examined the witnesses "as thoroughly and professionally as possible." (Id.)

Attorney Morgan states that Movant "disagreed with the Court's ruling that Mr. Michael

Meadows' pending criminal charge was off limits." (Id.) Thus, Attorney Morgan explains that

Movant felt counsel did not effectively cross-exam Michael Meadows on his mental status and

pending criminal charges. (Id., pp. 6 – 7.) Attorney Morgan explains that the Court had already

ruled that questioning on Mr. Meadows' pending criminal charge was prohibited by Rule 608 of

the Federal Rules of Evidence. (Id., p. 7.) Attorney Morgan explains even though Movant wanted

Mr. Meadows' purported mental illness explored, there was simply no basis for questioning him

on this issue because the only medical records of Mr. Meadows "were from Mr. Kostenko and

there was no mention of mental illness during six years Mr. Kostenko prescribed opiates to him."

(Id., p. 7.) Concerning Movant's claim that counsel "allowed all evidence presented by prosecution

to be misrepresented by witness testimony to inference guilty," Attorney Morgan states "I can only

say that the jury, as the trier of fact, would give the Government's evidence the weight it deemed

appropriate." (Id., p. 8.) Finally, Attorney Morgan states that the adverse decisions of the West

Virginia Board of Osteopathic Medicine, the Board of Pharmacy, and the DHHR were final

administrative actions with the except of one case that was on appeal. (Id.) Attorney Morgan

explains that he anticipated that when Movant testified, and Movant was adamant that he would

testify, Movant would attempt to counter those decisions. (Id.) Attorney Morgan, however, notes

that Movant "had given several hundred pages of testimony in those earlier hearings, none of which

was helpful to his criminal case, in my opinion." (Id.)

In his Affidavit, Attorney Lefler first states that "Defendant's assertion that he was not

aware that he could subpoena witness is not correct." (Id., Document No. 187, p. 9.) Attorney

Lefler states that "subpoenas were issued for both the trial and sentencing phase." (Id.) Concerning Movant's claim that his attorneys allowed evidence presented by the prosecution witnesses to be misrepresented, Attorney Lefler states that "defense counsel has no method for controlling the testimony of prosecution witnesses." (Id., p. 10.) Attorney Lefler states that "[t]he witnesses were cross-examined to the extent possible." (Id.) Attorney Lefler states he crossed examined one witness, and he attempted "to the greatest extent possible to assert and have the witness acknowledge positive points about the defendant's practices and the favorable points she had acknowledged in her witness interviews." (Id., p. 6.) Attorney Lefler explains that "the anticipated defense did incorporate the [Movant's] history with the medical establishment and government." (Id., p. 9.) Attorney Lefler further explains that "[i]t was anticipated that certain portions of the testimony in question would be challenged by [Movant], or other witnesses," but those events never occurred "given the [Movant's] termination of the trial by his plea." (Id., p. 10) Attorney Lefler states that "[t]o the extent that [Movant] criticizes counsel 'for accepting West Virginia State agency action,' the agency actions in question were final administrative decisions that, with the exception of one case, were final decisions with appeals either rejected or not filed." (Id.) Attorney Lefler explains that even though Movant may have desired for those matters to be relitigated, such was not going to occur in his criminal proceedings. (Id.)

In Response, the United States argues that above claim is without merit. (Id., Document No. 189, pp. 14 – 15.) First, the United States notes that both Attorneys Morgan and Lefler "indicated that they had met with the [Movant] and informed him of his ability to subpoena witnesses." (Id.) Concerning Movant's claim that Attorneys Morgan and Lefler "allowed" the Government to present certain witnesses, the United States contends that "defense counsel

correctly noted that they cannot control the testimony of prosecution witnesses and a jury, as trier of fact, gives the Government's evidence whatever weight it deems appropriate." (Id., p. 15.) The United States argues that Movant fails to establish a deficiency in Attorneys Morgan and Lefler's representation or demonstrate how the result of his plea proceeding would have been different. (Id.)

In Reply, Movant states under the penalty of perjury that he was not advised of his right to subpoena witnesses. (Id., Document No. 193, p. 15.) Movant argues that is a "dueling version of events offered by Mr. Kostenko and his former counsel" and he is entitled to an evidentiary hearing on the issue. (Id.) In his Supporting Affidavit, Movant argues that his attorneys refused to defend Movant's medical practice of "pathological adaptation." (Id., Document No. 194-1, p. 6.) Movant contends that counsel "denied meaningful analysis of [Movant's] role as a whistleblower in the decision to indict and prosecute [him]." (Id., p. 7.) Finally, Movant argued that his attorneys "refused to portray [him] as a responsible actor for self and social change." (Id., p. 11.) Therefore, Movant contends that the above ground should not be dismissed. (Id.)

To the extent Movant claims that Attorneys Morgan and Lefler were ineffective because Movant not aware that he could subpoena witnesses, the undersigned finds his claim to be without merit. During Movant's Plea Hearing, the District Court inquired of Movant's understanding of his right to subpoena witnesses. (Criminal Action No. 5:16-00221, Document No. 114, pp. 51 – 53.) Specifically, the following colloquy occurred between the District Court and Movant:

THE COURT:    Further, do you understand that had you desired to go to trial, you would have been entitled to the services of the United States Marshal to bring witnesses to trial under subpoena?

THE DEFENDANT:  What?

20

THE COURT:                Do you understand that you would have been entitled to the
                          services of the United States Marshal to bring witnesses to
                          trial under subpoena had you desired to call witnesses
                          during your trial?

THE DEFENDANT:  No.

(Mr. Morgan, Mr. Lefler, and the defendant conferred off the record, after which
the following occurred:)

THE COURT:                In fact, do you know or do you not know that your lawyers
                          made use of the marshals to serve subpoenas to witnesses
                          who would testify on your behalf?

THE DEFENDANT:  No.

THE COURT:                Do you have questions about that, Mr. Kostenko?

(Mr. Morgan, Mr. Lefler, and the defendant conferred off the record, after which
the following occurred:)

THE DEFENDANT:  I have had it explained to me. I understand that now, yes.

THE COURT:                And you indicated that you did not understand it
                          previously; is that correct?

THE DEFENDANT:  Correct.

THE COURT:                Now that you understand it, does it change your desire to
                          enter a plea of guilty?

(Pause)

THE COURT:                Does the fact that you now understand that the marshals
                          would serve subpoenas on witnesses who would testify on
                          your behalf change your desire to enter a plea of guilty?

THE DEFENDANT:  It is a very specific question, Your Honor. I'm going to say
                          "no."

THE COURT:                All right. Do you understand that by pleading guilty you
                          give up the right to call any and all witnesses except during
                          your sentencing hearing, Mr. Kostenko?

21

THE DEFENDANT: I do understand that now.

THE COURT:        All right.

THE DEFENDANT: The sentencing hearing, do we still get to subpoena witnesses?

(Mr. Morgan, Mr. Lefler, and the defendant conferred off the record, after which the following occurred:)

THE DEFENDANT: Okay.

THE COURT:        You understand that you've given up the right to subpoena witnesses or have them testify at trial because you're giving up your right to a trial, but that you - - now the only witnesses you could call would be during your sentencing hearing?

THE DEFENDANT: Yes.

(Id., pp. 51 - 53.) Although Movant indicated that he did not understand his right to subpoena witnesses prior to the Plea Hearing, Movant subsequently confirmed that he understood this right and he still wished enter a plea of guilty. Since the subsequent Rule 11 colloquy served to correct any misinformation by counsel, a guilty plea predicated on counsel's allegedly inaccurate or lack of information concerning Movant's right to subpoena witnesses is insufficient to constitute ineffective assistance of counsel. See United States v. Lambey, 974 F.2d 1389, 1395 (4th Cir. 1992)(en banc)(Where "the information given by the court at the Rule 11 hearing corrects or clarifies the earlier erroneous information given by the defendant's attorney and the defendant admits to understanding the court's advice, the criminal justice system must be able to rely on the subsequent dialogue between the court and the defendant."). As stated above, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing,

22

dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." Lemaster, 403 F.3d at 221 - 222. Movant has failed to show extraordinary circumstances. Furthermore, the record clearly reveals that Attorneys Morgan and Lefler had subpoenaed witnesses on Movant's behalf. (Criminal Action No. 5:16-00221, Document Nos. 93, 94, 95.) Accordingly, the undersigned finds Movant's allegation that Attorneys Morgan and Lefler were ineffective due to their failure to advise of his subpoena rights is without merit.

Next, Movant complains that Attorneys Morgan and Lefler were ineffective in failing "to submit prosecution's case to meaningful adversarial testing." In support, Movant argues that his attorneys "had no effective strategy to justify medical practices of petitioner," failed "to cross examine any of the prosecution witnesses for testimony being false or misleading," "allowed all evidence presented by prosecution to be misrepresented by witness testimony to the inference of guilt," and "accepted West Virginia state agency action against Kostenko as being true without preparing trial strategy for showing falsehood." The undersigned first notes that Movant ignores the fact that he knowingly and intentionally waived his right to a trial as part of the plea agreement. Movant entered his plea of guilty on day two of his jury trial, which was expected to span for a week and half. Attorneys Morgan and Lefler state that they cross-examined witnesses as thoroughly and professionally as possible, and the record supports such a claim. Although Movant may have desired for Mr. Meadows to be questioned concerning pending criminal charges, the District Court had prohibited such questioning. To the extent Movant wished for Mr. Meadows to be questioned concerning his alleged mental issues, Attorneys Morgan and Lefler explain that there were no medical records to support such questioning and his relevant testimony could have been collaborated by other witnesses. The undersigned notes that "strategic choices made after

thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Strickland, 466 U.S. at 690, 104 S.Ct. at 2065. Further, Movant cannot establish that he was prejudiced by Attorneys Morgan and Lefler's failure to challenge actions by West Virginia State agencies that were final decisions. See United States v. Kilmer, 167 F.3d 889, 893 (5th Cir. 1999)(stating that "[a]n attorney's failure to raise a meritless argument . . . cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue"); Moore v. United States, 934 F.Supp. 724, 731 (E.D.Va. 1996)(holding that "there can be no claim of ineffective assistance where, as here, counsel is alleged to have failed to raise a meritless argument"). Finally, the District Court advised Movant during his Plea Hearing that he was giving up his right to present witnesses and relieving the Government of its burden of proving his guilt. (Criminal Action No. 5:16-00221, Document No. 114, p. 50 – 51.)

Next, Movant essentially complains that Attorneys Morgan and Lefler were ineffective because they "allowed" the United States to present strong and compelling witnesses during the first days of his trial. Movant does not indicate any legal reason as to why these witnesses or their testimony should have been precluded. The mere fact that the United States was presenting strong or compelling witnesses to support its legal burden of proving Movant's guilt beyond a reasonable doubt does not establish ineffective assistance of counsel by Attorneys Morgan and Lefler. Further, although Movant may have perceived the United States' witnesses as strong or persuasive, the jury as the trier of fact would have determined the creditability of the witnesses. By pleading guilty, however, Movant relieved the United States of its legal burden of having to produce witnesses and evidence to prove Movant's guilt beyond a reasonable doubt. During his Plea Hearing, Movant

acknowledged that he understood the foregoing. (Criminal Action No. 5:16-00221, Document No. 114, pp. 50 – 51.) Movant further acknowledged he was in fact guilty of the distribution of oxycodone not for legitimate medical purposes in the usual course of his professional medical practice and beyond the bounds of medical practice in violation of 21 U.S.C. § 841(a)(1). (Id., pp. 36 – 40.) When asked why he believed he was guilty, Movant set forth in his own words an adequate factual basis to support his conviction. (Id.) Finally, as discussed in Section A above, Movant affirmed during his Plea Hearing that Movant was satisfied with Attorneys Morgan and Lefler's representation. (Id., p. 28.); See United States v. Jackson, 554 Fed.Appx. 156, 165 (4th Cir. 2014)(Wilkinson, J., dissenting)("Buyer's remorse should not be dressed in the garb of an ineffective assistance of counsel claim.")

Based upon the foregoing, the undersigned respectfully recommends that Movant's above *habeas* claim be dismissed.

### C.    Alleged failure to investigate:

In Ground Four, Movant alleges that Attorneys Morgan and Lefler were ineffective in failing to investigate. (Civil Action No. 5:19-00574, Document No. 177, p. 14.) First, Movant argues that his attorneys failed to secure an expert witness to testify on behalf of Movant and "no request was made for financial aid in court securing any expert." (Id.) Second, Movant complains that his attorneys failed to utilize an investigator and no funds were requested to secure an investigator. (Id.) In support, Movant states that a "client pamphlet from the Charleston Office of the Federal Public Defender notes an investigator as a standard for such trial preparation." (Id.) Finally, Movant complains that his attorneys failed to issue any subpoenas for any lay witnesses to testify at trial. (Id.)

25

In his Affidavit, Attorney Morgan states that Movant's "daughter, Christina, assisted me in trying to locate potential experts and provided me with names of several potential experts." (Id., Document No. 186, pp. 8 – 9.) Attorney Morgan explains that he "spoke to several of them but none were interested after learning of the particulars of the case." (Id., p. 9.) Attorney Morgan states that "securing an expert to testify that [Movant's] medical practice was within the bounds of medicine was a tall order." (Id.) Concerning the failure to retain an investigator, Attorney Morgan states that he "did not see the need" and Movant "never instructed us to investigate anything." (Id.) Concerning lay witnesses, Attorney Morgan states that he recalled "many discussions about potential witnesses for the defense" and "[w]e secured the attendance of three former employees through subpoena (Jennifer Harvey, Kenneth Lewis, and Robin Richmond, Docs. 93, 94, 95)." (Id., pp. 7 – 8.)

In his Affidavit, Attorney Lefler states that he "was not directly involved in the search for experts, [but he] had great concern for our ability to find an expert who would review the defendant's practice model favorably." (Id., Document No. 187, p. 2.) Attorney Lefler explains that "[a]lthough Mr. Morgan handled the search for an expert witness, together with defendant's daughter, I am aware that it was very difficult to find an expert to offer opinions as to the defendant's medical practice, especially in light of the fact the medical practice in question had little resemblance to other practices." (Id., p. 10.) Attorney Lefler acknowledges that no investigator was retained explaining that "neither Mr. Morgan nor I identified any particular area in which we felt an investigator was necessary." (Id.) Attorney Lefler states that "I do not believe that there were any potential witnesses which we had difficulty locating or information that we did not have at hand." (Id., pp. 10 – 11.) Finally, Attorney Lefler explains that "[d]uring the trial

preparations, we had identified several employees who we believed would be good witnesses, and we had interviewed those individuals in anticipation of presenting their testimony in our defense." (Id., p. 5.) Attorney Lefler states that although no subpoenas were issued for any expert, "[s]ubpoenas were issued for three former employees who it was anticipated could have addressed defendant's practices as well as refuted testimony from certain government witnesses." (Id., p. 11.)

In Response, the United States argues that above claim should be dismissed. (Id., Document No. 189, pp. 15 – 16.) The United States notes that Attorneys Morgan and Lefler indicate that they saw no need to hire an investigator as they had the information they needed at hand and Movant never instructed them to investigate anything. (Id., p. 15.) Next, the United States notes that Attorney Morgan worked with Movant's daughter, who is an attorney, in an attempt to locate potential experts. (Id.) The United States contends that although Movant's daughter provided the names of several potential experts, none were interested after learning of the particulars of the case. (Id.) The United States notes that Attorney Morgan states that the only expert he was able to find was in California and this expert wanted $10,000 in advance and the authorized budget from the Fourth Circuit Court of Appeals for retaining an expert is between $4,000 and $5,000. (Id., pp. 15 – 16.) Therefore, the United States argues that Movant fails to demonstrate any deficiency in Attorneys Morgan and Lefler's representation with respect to their investigation and not securing an expert witness, and Movant fails to demonstrate how the result of his proceedings would have been different. (Id., p. 16.)

In Reply, Movant argues that "[h]is former counsel concede that they recognized the necessity of obtaining an expert witness to refute the Government's expert and testify that Mr. Kostenko's medical practice was in compliance with accepted standards, but allowed financial

limitations to deprive Mr. Kostenko of such expert." (Id., Document Nos. 193, p. 16.) Movant

argues that a reasonable attorney "would be expected to investigate and request expert assistance

where, as here, the medical standards of care and underlying medical facts were complex." (Id., p.

17.) Movant argues that his attorney's decision to forego hiring an expert was merely a "financial

decision." (Id.) Movant concludes that "[h]ad counsel obtained the necessary medical expert there

is a reasonable probability that Mr. Kostenko would not have pleaded guilty." (Id., p. 18.) Movant

appears to indicate that Board President Miller and WVDHHR Medical Director James Becker

were potential experts. (Id., Document No. 194-2, pp. 12 – 13.) Movant explains that President

Miller "approved my practice after inspection extending from 2008 – 2012 by Notice of Approval"

and WVDHHR Medical Director James Becker approved "my practice after site inspection for my

petition under Pain Clinic Law through early 2015." (Id., p. 13.) Movant contends that additional

potential experts include Board Medical Expert Adams, Public Health Director Gupta, American

Board of Independent Medical Examiners President Mohammad Ranavaya. (Id., p. 14.) Movant

concludes these individuals were potential experts because their duties "required investigation" of

Movant's medical practice from 2010 through 2015. (Id.)

Movant claims that his attorneys were ineffective in failing to investigate, secure an expert

witness, and subpoena lay witnesses. "To prevail on an [ineffective assistance of counsel] claim

based on a failure to investigate, a petitioner must specify 'what an adequate investigation would

have revealed." Walton v. Ballard, 2018 WL 1582727, * 7 (S.D.W. Va. March 20, 2018)(quoting

Bassette v. Thompson, 915 F.2d 932, 940-41 (4th Cir. 1990)). Movant merely concludes his

attorneys were ineffective in failing to retain an investigator. Although Movant contends that

Attorneys Morgan and Lefler should have retained an investigator, Movant fails to provide any

28

details with respect to what issues counsel should have investigated or how he was prejudiced by such failure. Both Attorneys Morgan and Lefler declare that they saw no need to hire an investigator because they had the information they needed at hand. Accordingly, the undersigned finds that Movant cannot establish either prong of the Strickland standard concerning his attorneys' failure to hire an investigator.

Next, Movant contends that Attorneys Morgan and Lefler were ineffective in failing to subpoena lay and expert witnesses. "[T]he decision whether to call a defense witness is a strategic decision demanding the assessment and balancing of perceived benefits against perceived risks, and on to which we must afford enormous deference." United States v. Terry, 366 F.3d 312, 317-18 (4th Cir. 2004)(counsel's decision not to call certain witnesses was reasonable based upon his professional judgment); also see Strickland, 466 U.S. at 690, 104 S.Ct. at 2065("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."); United States v. Champman, 593 F.3d 365, 369 (4th Cir. 2010)(even if defendant disagrees, "which witnesses to call is a classic tactical decision left to counsel"); United States v. Best, 219 F.3d 192, 201 (2nd Cir. 2000)(the failure to call witnesses, even those who might offer mitigating evidence, is not ordinarily viewed as a lapse in professional judgment); Goodson v. United States, 564 F.2d 1071, 1072 (4th Cir. 1977)(the failure to call witnesses is a tactical decision that generally does not amount to ineffective assistance of counsel). It is well recognized that tactical decisions, such as which witness to call, are "virtually unchallengeable." Powell v. Kelly, 562 F.3d 656, 670 (4th Cir. 2009)(quotation marks omitted); United States v. Orr, 636 F.3d 944, 955 (8th Cir. 2011)("[W]e consistently have affirmed that a defense counsel's decision not to call a witness is a virtually unchallengable decision of trial strategy."); Hall v. Thomas, 611 F.3d

1259, 1293 (11th Cir. 2010)("[T]he decision concerning which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess."); Boyle v. McKune, 544 F.3d 1132, 1139 (10th Cir. 2008)("[T]he decision of which witnesses to call is quintessentially a matter of strategy for the trial attorney.").

As to lay witnesses, both Attorneys Morgan and Lefler declare that such witnesses were subpoenaed on behalf of Movant. The record further confirms that Movant's attorneys subpoenaed three former employees (Jennifer Harvey, Kenneth Lewis, and Robin Richmond) of behalf of Movant. (Criminal Action No. 5:16-00221, Document Nos. 93, 94, 95). As to an expert witness, Movant's attorneys acknowledged that they attempted but were unsuccessful in securing an expert witness on behalf of Movant. (Id., Document Nos. 186 and 187.) Attorney Morgan explains that they sought to secure an expert witness to testify that Movant's medical practice was in compliance with accepted standards, but such was a "tall order." (Id., Document No. 186, pp. 2 and 9.) Attorney Morgan describes Movant's medical practice as follows:

> His medical practice was unorthodox, consisting of a series of video-taped lectures followed by brief, face-to-face meetings after which he would prescribe 100 percent of his patients oxycodone in return for cash. Mr. Kostenko's approach to the treatment of chronic diseases most common in West Virginia (heart disease, obesity, cancer, diabetes, COPD, ect.) was holistic in nature and based on my research then and now, not in conformity with the prevailing standards of medical practice.

(Id., p. 2.) Attorney Morgan states the only possible expert he could find was in California and this expert wanted $10,000.00 in advance. (Id., p. 2.) Attorney Morgan explains that he had several discussions with the budgeting director with the Fourth Circuit Court of Appeals, who advised Attorney Morgan that even though the Fourth Circuit would authorize payment for an expert witness, "the judges traditionally would not approve payment of more than $4,000.00 to $5,000.00.

(Id.) Attorney Morgan explains that he worked in conjunction with Movant's daughter, an attorney, who provided the names of several potential expert witnesses. (Id., pp. 2 and 9.) Attorney Morgan states that he "spoke to several of them but none were interested after learning the particulars of the case." (Id., p. 9.) Therefore, the undersigned cannot find that Attorneys Morgan and Lefler acted unreasonably in failing to secure an expert witness. Although Movant contends that he would not have pled guilty had his attorneys secured an expert witness, Movant fails to identify by name an expert witness that was willing to testify in Movant's favor or an affidavit verifying the expert witness's possible testimony. See Bassette v. Thompson, 915 F.2d 932, 940-41 (4th Cir. 1990)(petitioner must proffer evidence of what the witnesses' testimony would have been and cannot establish ineffective assistance of counsel based on a general claim that additional witnesses should have been called); United States v. Ashimi, 932 F.2d 643, 650 (7th Cir. 1991)(a defendant who faults counsel for not calling a witness cannot simply state the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance of counsel claim); Slate v. Vargo, 2014 WL 3378627, * 7 (E.D.Va. July 8, 2014)("In federal jurisprudence it is well established that a claim of ineffective assistance predicated on the failure to call witnesses fails where affidavits verifying the witnesses' testimony are not provided."); Johnson v. McCall, 2010 WL 936726, * 4 (D.S.C. March 15, 2010)("[M]ere speculation what the witnesses' testimony would have been cannot, by itself, satisfy the applicant's burden of showing prejudice.") In his Supporting Affidavit, Movant contends that potential experts included the following individuals: President Miller of the State Board of Osteopathic Medicine; WVDHHR Medical Director James Becker; Board Medical Expert Adams; Public Health Director Gupta; and American Board of Independent Medical Examiners President Mohammad Ranavaya. Importantly, however, there are

no affidavits verifying these potential expert witnesses' possible testimony. Furthermore, there is no indication that such testimony would have been favorable to Movant. Movant concludes these individuals were potential experts because their duties "required investigation" of Movant's medical practice from 2010 through 2015. The West Virginia Board of Osteopathic Medicine, the Board of Pharmacy, and the DHHR, however, had all taken adverse actions against Movant for various infractions. Additionally, Movant filed an unsuccessful RICO action against Mohammad Ranavaya and James Becker. See Kostenko v. Ranavaya, 2008 WL 691684 (S.D.W.Va. March 12, 2008). Finally, the West Virginia Board of Osteopathic Medicine revoked Movant's medical license. Movant's self-serving speculation that these individuals may been favorable expert witnesses will not sustain an ineffective assistance of counsel claim. Thus, the undersigned finds that Movant has failed to establish that his attorneys were deficient or that he was prejudiced by the alleged deficiency.

Furthermore, a review of the transcripts from the Plea Hearing reveals that the District Court thoroughly questioned Movant concerning his satisfaction with counsel. As discussed in Section A above, Movant affirmed during his Plea Hearing that Movant was satisfied with Attorneys Morgan and Lefler's representation. "[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." Lemaster, 403 F.3d at 221-22. Movant has failed to show extraordinary circumstances.

Based upon the foregoing, the undersigned respectfully recommends that Movant's above claim of ineffective assistance of counsel be denied.

**D.    Alleged failure to raise pretrial claim of the Government's prosecution being unlawful and unconstitutional:**

In Ground Five, Movant alleges that Attorneys Morgan and Lefler were ineffective in failing "to raise a pretrial claim of the Government's decision and process of prosecution being unlawful and unconstitutional." (Civil Action No. 5:19-00574, Document No. 177, pp. 14 - 15.) Movant claims that the United States' decision to prosecute was based upon an "unjustified reason" and for "whistleblower retribution." (Id., p. 14.) Movant contends the United States used "means of fraudulent official process, procedures, and misrepresentation of evidence and witness testimony." (Id.) Movant states that "the RICO association-in-fact enterprise is ongoing" and the United States' act of prosecuting Movant was "to discredit [Movant's] reporting to the Government of an unlawful scheme involving the Government." (Id.) Movant further states that the "anticipated testimony of expert witness Kennedy and former patient Michael Meadows are characterized and dependent by a pattern of misrepresentations and falsehood predicated in purpose and defining of the association-in-fact enterprise." (Id., pp. 14 – 15.) Movant argues that "any communication to the court by defense or prosecution counsel that this scheme is not ongoing is misprision." (Id., p. 15.) Movant contends that "defense counsel with showing of scheme and fraudulent Government representations – state and federal – should have moved the court for prisoner release for preparation of trial, or release without provision for prosecution." (Id.)

In their Affidavits, Attorneys Morgan and Lefler note that the majority of the above allegations were directed at the United States without explaining how counsel were deficient. (Id., Document No. 186, p. 9 and Document No. 187, p. 11.) To the extent Movant alleges that counsel failed to request Movant's pretrial release, Attorney Lefler states that they "made multiple requests for defendant's release pretrial, all of which were denied by the court." (Id., Document No. 187,

33

p. 11.) Attorney Lefler further notes that although Movant "references schemes and fraudulent government representations," "no specifics are provided" by Movant. (Id.)

In Response, the United States argues that above claim should be dismissed. (Id., Document No. 189, p. 16.) The United States argues that Movant's claim that his attorneys were ineffective by failing to raise a pretrial claim of an unlawful and unconstitutional prosecution, thereby showing corrupt government involvement, is conclusory. (Id.) The United States notes that Movant fails to provide any "legal authority or factual basis to support his claims that his attorneys failed to oppose the prosecution, nor does he point to anything in the record or legal authority to demonstrate the government unconstitutionally, unlawfully, or improperly prosecuted this matter." (Id.) Movant fails to specifically address the above ground in his Reply and Supporting Affidavit. (Id., Document Nos. 193, 194-1, and 194-2, p. 1.) In support of the above ground, Movant merely complains that counsel "allowed" Special Agent King to present the United States' version of the facts. (Id., Document No. 194-1, pp. 13 – 16 and Document No. 194-2, p. 1.) Movant states that "[c]ounsel would not allow clarification of the term to characterize fraudulent government sponsored medicine." (Id., Document No. 194-1, p. 16.)

Movant's allegation that his attorneys were ineffective in failing to assert a pretrial challenge to the United States' "unlawful and unconstitutional prosecution," is conclusory and insufficient. A movant must make specific allegations establishing reason to believe that, if the facts are fully developed, he is entitled to relief. United States v. Roane, 378 F.3d 382, 403 (4th Cir. 2004). Movant, however, fails to explain how counsel acted ineffectively or how Movant was prejudiced by such conduct. The Fourth Circuit has recognized that "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the

District Court." United States v. Dyess, 730 F.3d 354, 359 (4th Cir. 2013)(citing United States v. Thomas, 221 F.3d 430, 437 (3rd Cir. 2000)); also see Blackledge v. Allison, 431 U.S. 63, 74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1997)(the "presentation of conclusory allegations unsupported by specifics is subject to summary dismissal"); United States v. McClellan, 2017 WL 2822315 (3rd Cir. Jan. 3, 2017)(finding petitioner's conclusory allegations of the ineffective assistance of counsel were insufficient); United States v. Faria, 268 Fed.Appx. 730 (10th Cir. 2008)(conclusory allegations of ineffective assistance of counsel were insufficient to warrant habeas relief); Jones v. Gomez, 66 F.3d 199, 204 (9th Cir. 1995)(finding habeas relief was unwarranted based on "conclusory allegations which are not supported by a statement of specific facts"); Andiarena v. United States, 967 F.2d 715, 719 (1st Cir. 1992)(finding summary dismissal appropriate where petitioner's claim was "wholly conclusory"). In support his above claim, Movant merely makes the following conclusory arguments: (1) The United States' decision to prosecute was based upon an "unjustified reason" and for "whistleblower retribution;" (2) The United States used "means of fraudulent official process, procedures, and misrepresentation of evidence and witness testimony;" and (3) "The RICO association-in-fact enterprise is ongoing." Movant fails to offer any factual basis to support the foregoing arguments. To the extent Movant argues that his attorneys failed to request his pretrial release, such is clearly refuted by the record. (Criminal Action No. 5:16-00221, Document No. 47.) Additionally, Movant's attorneys again requested his release at his Plea Hearing. (Id., Document No. 114, pp. 59 - 60.) Accordingly, the undersigned respectfully recommends that Movant's above claim of ineffective assistance of counsel be denied.

### E.    Alleged failure to file a motion to withdraw guilty plea:

In Ground Six, Movant alleges that Attorneys Morgan and Lefler were ineffective in failing

to file motion to withdraw guilty plea. (Civil Action No. 5:19-00574, Document No. 177, p. 15.) Movant further states that his attorneys were unsuccessful in requesting to withdraw as counsel for Movant. (Id.)

In his Affidavit, Attorney Morgan acknowledges that they did not seek to withdraw Movant's guilty plea. (Id., Document No. 186, p. 9.) Attorney Morgan, however, explains that Movant never requested or instructed them to file a motion to withdraw his guilty plea. (Id.) In his Affidavit, Attorney Lefler acknowledges that Movant "is correct that counsel was not successful in having themselves removed from the case post conviction and presentencing." (Id., Document No. 187, p. 11.) Attorney Lefler, however, argues that they filed a motion requesting their removal as counsel, but the motion was denied by the Court. (Id.) Attorney Lefler explains that "[f]ollowing this denial, I specifically suggested to [Movant] that if he wished to persist in seeking our removal and appointment of new counsel that he should address his request to the court with as much detail as to the basis of his request." (Id.)

In Response, the United States argues that above claim should be dismissed. (Id., Document No. 189, pp. 16 – 17.) The United States notes that Attorneys Morgan and Lefler did file a motion to withdraw as counsel, but the motion was denied by the Court. (Id., p. 16.) Next, the United States contends that Attorneys Morgan and Lefler were not ineffective in failing to file a motion to withdraw guilty plea where Movant never requested that such a motion be filed. (Id., p. 17.) Accordingly, the United States contends that Attorneys Morgan and Lefler were not deficient. (Id.) Movant does not address the above ground in his Reply or Supporting Affidavit. (Id., Document Nos. 193, 194-1, and 194-2.)

A review of the record reveals that Attorneys Morgan and Lefler filed a Motion to

36

Withdraw as Counsel. (Criminal Action No. 5:16-00221, Document No. 115.) The District Court, however, denied the Motion explaining as follows:

> Given the history of this case, it is not clear to the Court that appointing new counsel prior to sentencing would serve any purpose. Appointing new counsel simply based on an indigent defendant's vague dissatisfaction with his or her attorney(s) would permit indigent defendants who are so inclined to "shop" through several attorneys costing significant time and resources. The motion does not provide any details regarding the asserted breakdown in communication, nor does it explain what happened between the plea hearing and the present to alter the Defendant's opinion regarding his representation.

(Id., Document No. 117, p. 2.) The mere fact that the Motion to Withdraw as Counsel was denied, does not establish that Attorneys Morgan and Lefler were ineffective in their representation of Movant. Next, the undersigned finds that Attorneys Morgan and Lefler were not ineffective in failing to file a motion to withdraw guilty plea. Movant's attorneys state that Movant never requested that they file a motion to withdraw guilty plea. Additionally, Movant attorneys state that they believed Movant's acceptance of the plea agreement was in Movant's best interest. The undersigned notes that Movant was charged in a twenty-two count Superseding Indictment consisting of the following: (1) One count of maintaining a drug-involved premises in violation of 21 U.S.C. § 856(a)(1) (Count One); (2) Nineteen counts of distribution of oxycodone not for legitimate medical purposes in the usual course of professional medical practice and beyond the bounds of medical practice in violation of 21 U.S.C. § 841(a)(1) (Counts Two through Twenty); (3) One count of distributing oxycodone not for legitimate medical purposes in the usual course of professional medical practice and beyond the bounds of medical practice which distribution resulted in the death of Patient 1 from subsequent use of the prescribed oxycodone in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count Twenty-One); and (4) One count of distributing oxycodone not for legitimate medical purposes in the usual course of professional medical practice

37

and beyond the bounds of medical practice which distribution resulted in the death of Patient 5 from the subsequent use of the prescribed oxycodone in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count Twenty-Two). (Id., Document No. 54.) Movant pled guilty to Count Seven of the Superseding Indictment (distribution of oxycodone not for legitimate medical purposes in the usual course of professional medical practice and beyond the bounds of medical practice in violation of 21 U.S.C. § 841(a)(1)), and the remaining twenty-one counts were dismissed. (Id., Document No. 103.) As Attorney Lefler explains in his Affidavit, Movant was facing two counts involving "causing death" to a patient that carried a 20-year *minimum* sentence as opposed to Count Seven that carried a 20-year *maximum* sentence. (Id., Document No. 187, pp. 4 and 8.) Movant clearly received a significant benefit as a result of his plea. Based upon the foregoing, the undersigned respectfully recommends that Movant's above claim of ineffective assistance of counsel be denied.

## 2. **Actual innocence:**

In Ground Seven, Movant alleges he is actually innocent. (Civil Action No. 5:19-00574, Document No. 177, pp. 15 - 19.) In support, Movant states that his plea of guilty "is true only to the extent that the Government's authorized medical standard of care is true." (Id., p. 15.) Movant alleges that the "Government's authorized medical guidelines are fraudulent." (Id.) Movant claims that he did not plead guilty to the "violation of DEA law." (Id.) Movant further argues he was prosecuted as a result of his "whistleblower claim." (Id.) Movant explains that the "nature of this fraud was reported to the West Virginia Dept. of Health and Human Services and the Board of Osteopathic Medicine." (Id., p. 16.) Movant contends that "fraud is the censorship of the principles of pathologic adaptation from government authorized medical and government regulatory agency

38

guidelines." (Id.) Movant argues that the United States presented the jury with "misrepresentations or falsehoods." (Id., p. 17.) Movant complains that the United States stated that Movant transferred property to his ex-wife. (Id.) Movant contends this statement is false because she co-owned the property with Movant since the original purchase in 1990. (Id.) Movant contends that Special Agent King presented misrepresentations regarding his patient files. (Id.) Movant complains that the United States "made opportunity for discharged patients of Kostenko to be informants" and allowing Mr. Meadows "to gain legal advantage from prior bad acts." (Id., p. 18.) Finally, Movant states that he "is not a drug addict and has never been one." (Id.)

In Response, the United States argues that above claim should be dismissed. (Id., Document No. 189, pp. 17 – 18.) The United States argues that the "facts" and "determinative facts" listed by Movant, wherein he attempts to explain schemes by the Government, medical bodies, and the administrative bodies, are unsupported by the record. (Id., p. 18.) Furthermore, the United States notes that Movant admitted the factual basis of his offense and has failed to demonstrate by clear and convincing evidence why the presumed truthfulness of his Rule 11 colloquy should be overturned. (Id.) Movant fails to address the foregoing in his Reply. (Id., Document No. 193.) In his Supporting Affidavit, Movant argues that "[c]ounsel largely ignored the ground of actual innocence." (Id., Document Nos. 194-2, p. 16.)

Actual innocence claims are asserted in two ways: (1) As a gateway claim; or (2) As a freestanding claim. See Schlup v. Delo, 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)(Distinguishing the claim of innocence before it as a "gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits" from a freestanding actual innocence claim.) When a prisoner asserts a gateway claim, "[a]ctual

innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar [or] expiration of the AEDPA statute of limitations." McQuiggin v. Perkins, 569 U.S. 383, 133 S.Ct. 1924, 1926, 185 L.Ed.2d 1019 (2013). A prisoner "asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" House v. Bell, 547 U.S.518, 536-37, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006)(quoting Schlup v. Delo, 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)). An actual innocence gateway claim "requires [a] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." Schlup, 513 U.S. at 324, 115 S.Ct. at 865; also see McQuiggin, 133 S.Ct. at 1936(finding that the *Schlup* standard is demanding and requires strong evidence of actual innocence).

As to a freestanding actual innocence claim, the United States Supreme Court has "not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence." McQuiggins, 569 U.S. at 392, 133 S.Ct. at 1931(citing Herrera v. Collins, 506 U.S. 390, 404-05, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993); Buckner v. Polk, 453 F.3d 195, 199 (4th Cir. 2006)("[C]laims of actual innocence are not grounds for federal habeas relief even in a capital case"). The Herrera Court, however, recognized the possibility of a theoretical freestanding claim of actual innocence that is limited to capital cases. Herrera, 506 U.S. at 417, 113 S.Ct. at 869. The Herrera Court explained that even assuming the existence of a freestanding actual innocence claim, the evidentiary standard would "necessarily be extraordinarily high." Id.; House v. Bell, 547 U.S. 518, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006)("The threshold showing for [a freestanding claim]

would be extraordinary high, and . . . [petitioner] has cast doubt on his guilt sufficient to satisfy *Schlup's* gateway standard for obtaining federal review, but given the closeness of the *Schlup* question here, his showing falls short of the threshold implied in *Herrera*"). "To be entitled to relief, . . . petitioner would at the very least be required to show that based on proffered newly discovered evidence and the entire record before the jury that convicted him, 'no rational trier of fact could [find] proof of guilty beyond a reasonable doubt.'" Herrera, 506 U.S. at 429, 113 S.Ct. at 875(White, J. concurring). "As a practical matter, no petitioner has ever made such a showing." Brown v. Booker, 2021 WL 1207751, * 16 (W.D.Va. March 31, 2021).

This District has held that "[a]ctual innocence based on newly discovered evidence is not an independent ground for federal habeas relief." Christian v. Ballard, 2013 WL 4046348, * 13 (S.D.W.Va. August 8, 2013)(J. Chambers)(citing Herrera v. Collins, 506 U.S. 390, 400, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993); also see Anstey v. Terry, 2019 WL 3713715, * 2 (S.D.W.Va. Aug. 6, 2019)(J. Copenhaver)("[A] freestanding claim of actual innocence has not been recognized by the Fourth Circuit or Supreme Court outside of a capital context; nonetheless the standard for a freestanding innocence claim is extraordinarily high"); Jones v. Seifert, 808 F.Supp.2d 900 (S.D.W.Va. Sept. 8, 2011)(J. Goodwin)("Although the Supreme Court has never expressly foreclosed a free-standing claim of actual innocence, it has also "yet to come across any prisoner who could make the extraordinarily high threshold showing for such an assumed right."). It is well recognized that "[a] claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." Herrera, 506 U.S. at 404, 113 S.Ct. at 853. Accordingly, the

undersigned respectfully recommends that Movant's freestanding claim of actual innocence be dismissed.

Even assuming *arguendo* that Movant's claim is cognizable, Movant's allegations of his actual innocence cannot survive Herrera's stringent evidentiary test. The record reveals that Movant pled guilty to Count Seven of the Superseding Indictment. As determined by the Fourth Circuit, Movant entered his plea knowingly and voluntarily. Kostenko, 733 Fed.Appx. at 719; also see Boeckenhaupt, 537 F.2d at 1183 (a movant may not reassert a claim decided on direct review). It is undisputed that Movant's Plea Agreement contained a "Stipulation of Facts," which was attached as Exhibit A. (Criminal Action No. 5:16-00221, Document No. 103, pp. 9 - 11.) The "Stipulation of Facts" stated, in pertinent part, as follows:

1.     Defendant reaffirms the facts set out in Trial Exhibit 46, as contained herein.

   a.     At all relevant times, defendant owned and operated Coal Country Clinic, a medical practice, located within his residence in Daniel, Raleigh County, West Virginia, and within the Southern District of West Virginia.

   b.     At all relevant times, defendant was a licensed doctor of osteopathy, who was permitted to write prescriptions for medication, including oxycodone, a Schedule II narcotic pain medication, pursuant to a DEA Registration Number.

   c.     On or about December 9, 2013, at or near Daniels, Raleigh County, West Virginia, within the Southern District of West Virginia, defendant distributed a quantity of oxycodone, a Schedule I controlled substance, to Patient 7 not for legitimate medical purposes in the usual course of professional medical practice and beyond the bounds of medical practice, under prescriber RX#160422, and pursuant to Pharmacy RX# 6275549.

   d.     Specifically, on or about December 9, 2013, defendant was at home recovering from a medical condition that had caused him to be hospitalized and away from his practice for

approximately three weeks. On that date, approximately 271 patients arrived at defendant's home/office seeking prescriptions for oxycodone. Members of defendant's staff collected approximately $100 cash from each patient, totaling over $20,000, which defendant later caused to be deposed at a local bank in amounts less than $10,000. Then, from his upstairs bedroom and without seeing any of the said patients, including Patient 7, defendant wrote approximately 375 prescriptions for oxycodone, including:

| 1 | 5 mg | 84 pills |
|---|---|---|
| 278 | 15 mg | 16,853 pills |
| 96 | 30 mg | 5,318 pills |
| | | 22,255 (total) |

The prescriptions were then handed out to the patients by members of defendant's staff, including the distribution to Patient 7 referenced in Paragraph c above.

e.    Defendant stipulates that none of the oxycodone prescriptions written on December 9, 2013, were for legitimate medical purposes in the usual course of professional medical practice and, in fact, by writing them, defendant was acting beyond the bounds of medical practice.

2.    On or about January 11, 2016, at or near Daniels, Raleigh County, West Virginia, within the Southern District of West Virginia, defendant distributed oxycodone to Patient 7 not for legitimate medical purposes in the usual course of professional medical practice and beyond the bounds of medical practice.

(Id.) During the Plea Hearing, Movant affirmed that he signed the above "Stipulation of Facts."

(Id., Document No. 114, p. 34.) Movant further acknowledged he was in fact guilty of the distribution of oxycodone not for legitimate medical purposes in the usual course of his professional medical practice and beyond the bounds of medical practice in violation of 21 U.S.C. § 841(a)(1). (Id., pp. 36 – 40.) When asked why he believed he was guilty, Movant set forth in his own words an adequate factual basis to support his conviction. (Id.) Movant has failed to show that based on proffered newly discovered evidence and the entire record before the Court, that "no

43

rational trier of fact could [find] proof of guilt beyond a reasonable doubt." Movant fails to proffer any newly discovered evidence. Rather, Movant asserts the same defenses that were available to him at the time of his decision to plead guilty. Movant's allegations suggest that he is now suffering "buyer's remorse" regarding his plea deal and ultimate sentence. See Dingle v. Stevenson, 840 F.3d 171, 174 (4th Cir. 2016)("Pleading guilty typically entails a deliberate choice to accept the risks and rewards of a deal, and that decision may not be casually set aside on the basis of buyer's remorse."); United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012)("Pleading guilty generally involves a conscious decision to accept both the benefits and burdens of a bargain. That decision may not be lightly undone by buyer's remorse on the part of one who reaped advantage from the purchase."). Movant's above attempt to sidestep the consequences of his guilty plea via a claim of actual innocence fails. Accordingly, the undersigned respectfully recommends that Movant's above *habeas* claim be denied.

3.    **Fundamental Miscarriage of Justice Claim:**

In Ground Eight, Movant alleges a claim of "miscarriage of justice." (Civil Action No. 5:19-00574, Document No. 177, pp. 19 - 20.) In support of this claim, Movant claims he filed a RICO claim alleging an "unlawful plan to manage risk to corporations arising from chemical exposure by censorship of the medical principle to diagnose harm, conceal health hazards, and deny evidence of harm to people." (Id., p. 19.) Movant states that the Government censors "scientific integrity" and the "principle of pathologic adaptation" through health-related agency protocol and medical guidelines to circumvent the purpose of Occupational Safety and Health Act of 1970 and public health laws. (Id.) Movant alleges that the reported this to "government heath related agencies" beginning in 2004 through 2016. (Id.) Movant claims the United States made a

44

"deliberate decision" to prosecute Movant "for the unjustified and criminal purpose to discredit [Movant] for his report of the government involvement in the scheme to defraud the people." (Id.) Movant alleges that "[t]his claim made effectively pretrial would have precluded the government from obtaining a valid conviction." (Id., p. 20.)

In Response, the United States argues that above claim should be dismissed because Movant fails to demonstrate an applicable procedural default. (Id., Document No. 189, pp. 18 – 19.) The United States notes that Movant "has provided no additional procedural defaults, instead repeating his ineffective assistance of counsel claims from his direct appeal and continuing to list statements which he believes are determinative of his innocence and are unsupported by the record." (Id., p. 19.) Movant fails to address the foregoing in his Reply. (Id., Document No. 193.) In his Supporting Affidavit, Movant argues that "the unjustified purpose was unlawful furthering of conduct of a criminal enterprise involving government agencies, by timing and use of fraudulent official procedures in pattern of acts related to discrediting my reporting of the criminal enterprise." (Id., Document Nos. 194-2, p. 16.) Movant complains that his prosecution "obstructed the judicial review" of the revocation of his license and "obstructed process of my whistleblower claim." (Id., pp. 16 – 17.)

The undersigned finds that "miscarriage of justice" is not a stand-alone claim. The Supreme Court has recognized a "fundamental miscarriage of justice exception" that allows a prisoner to pursue a constitutional post-conviction claim on the merits notwithstanding the existence of a procedural bar, upon a showing of actual innocence. McQuiggin, 569 U.S. at 392, 133 S.Ct. at 1931. This exception applies only in limited circumstances where new reliable evidence shows that it is more likely than not that no reasonable juror would have convicted movant. See Herrera,

506 U.S. 390, 405, 113 S.Ct. at 863("The fundamental miscarriage of justice exception is available 'only where the prisoner supplements his constitutional claim with a colorable showing of factual innocence.'") Movant makes no such showings, and his reliance on miscarriage of justice as a stand-alone claim is without merit. Accordingly, the undersigned respectfully recommends that Movant's above *habeas* claim be denied.

**4.    Request for "RICO Case Statement Order":**

Movant states that he requests a "RICO Case Statement Order" because his Section 2255 Motion claims ineffective assistance of counsel by showing actual innocence and unjustified prosecution based upon corruption of the government. (Civil Action No. 5:19-cv-00574, Document No. 117, pp. 21 – 22.) As explained above, the undersigned has determined that Movant is not entitled to *habeas* relief. Accordingly, the undersigned respectfully recommends that Movant's above request be denied.[3]

## PROPOSAL AND RECOMMENDATION

Accordingly, the undersigned respectfully proposes that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **DISMISS** Movant's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (Document No. 177) and **REMOVE** this matter from the Court's docket.

Movant is notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the

---

[3] Plaintiff's prior RICO action was dismissed for failure to state or indicate any plausible factual basis in support of the RICO elements. *Kostenko v. Ranavaya*, 2008 WL 691684 (S.D.W.Va. March 12, 2008)(J. Johnston).

Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(c) of the Federal Rules of Criminal Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing of these Findings and Recommendation within which to file with the Clerk of this Court, written objections, identifying the portions of the Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208, 104 S. Ct. 2395, 81 L. Ed. 2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Berger, and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Movant, who is acting *pro se*, and counsel of record.

Date: August 4, 2021.

Omar J. Aboulhosn
United States Magistrate Judge